**Rochelle S. MOSER, Plaintiff–Appellant,**

v.

**Anne Sisko POLLIN, Irvin Pollin, Hyman Sisko, and George M. Cerrone, Defendants–Appellees.**

**Docket No. 01–9030.**

United States Court of Appeals, Second Circuit.

Argued: March 22, 2002.

Decided: June 21, 2002.

---

Bertil Peterson, Great Neck, N.Y. (Jeffrey M. Rosenblum, Jeffrey M. Rosenblum, P.C., Great Neck, NY, on the brief), for Plaintiff–Appellant.

Gary B. Freidman, Greenfield, Stein & Senior, L.L.P., New York, N.Y. (Jeffery H. Sheetz on the brief), for Defendants–Appellees Anne Sisko Pollin, Irvin Pollin, and Hyman Sisko.

Joseph T. Belevich, Mineola, NY, for Defendant–Appellee George M. Cerrone.

Before FEINBERG, OAKES, and STRAUB, Circuit Judges.

STRAUB, Circuit Judge.

We are presented in this appeal with an intra-family dispute concerning the validity of the last will and testament of Isidore Sisko (also referred to herein as the "decedent"), a late resident of Jackson Heights, New York. In that testamentary instrument—which was admitted to probate in 1994 by the New York State Surrogate's Court for Queens County (the "Surrogate's Court")—Isidore Sisko bequeathed the entirety of his estate to his sister, Defendant–Appellee Anne Sisko Pollin ("A.S. Pollin"), but gave nothing to his daughter and only child, Plaintiff–Appellant Rochelle S. Moser ("Moser"). Attributing her total disinheritance to foul play by A.S. Pollin and the other three defendants, Moser has turned concurrently to two courts for relief.

First, in March 1998, Moser petitioned the Surrogate's Court to vacate its prior decree admitting the decedent's will to probate. The basis for the vacatur petition were allegations by Moser that the decedent's will is a forgery and that the defendants engaged in testamentary fraud. A trial remains forthcoming in that matter. Second, in April 2000, Moser filed in the United States District Court for the Eastern District of New York a diversity action asserting various state-law claims against the defendants, namely fraudulent concealment and constructive fraud in connection with the 1994 probate of the decedent's will.

The appeal now before us arises directly out of Moser's latter lawsuit. Specifically, Moser appeals from an order of the United States District Court for the Eastern District of New York (Frederic Block, *Judge*) staying the defendants' motions to dismiss the complaint pending resolution of the concurrent vacatur proceeding before the Surrogate's Court. Moser contends that the District Court abused its discretion in issuing the stay and thus Moser's federal diversity action against the defendants should never have been held in abeyance. We decline to address the merits of the stay because we vacate the District Court's order on jurisdictional grounds. For the reasons set forth below, we hold that the probate exception to federal diversity jurisdiction bars the District Court from exercising subject matter jurisdiction over Moser's complaint.

**FACTUAL BACKGROUND**

When Isidore Sisko died on May 7, 1994, his gross estate was valued at approximately $900,000. Surviving the decedent

were a number of relatives, including Moser, A.S. Pollin, Irvin Pollin (husband of A.S. Pollin), and Hyman Sisko (the decedent's brother). All are parties to this federal diversity suit.

The decedent's last will and testament (the "Will"), dated just two days before his death, named A.S. Pollin the executrix and sole beneficiary of his estate. The attesting witnesses to the Will were Hyman Sisko and Laura Monserrat, the daughter of the decedent's long-time domestic companion. Were it not for the existence and operation of the Will, New York's laws of intestacy would have caused the decedent's entire estate to be distributed to Moser rather than A.S. Pollin. *See* N.Y. Est. Powers & Trusts Law § 4 1.1(a)(3).

On June 30, 1994, A.S. Pollin petitioned the Surrogate's Court to admit the Will to probate. A.S. Pollin retained the services of George M. Cerrone ("Cerrone"), a New York attorney and the remaining defendant in this case. Pursuant to a Consent and Waiver to Probate executed by Moser, as well as affidavits of attestation submitted by Hyman Sisko and Laura Monserrat, the Surrogate's Court issued a decree admitting the Will to probate on August 30, 1994 (the "1994 Probate Decree").

The above events would have put to rest, so to speak, the decedent's worldly affairs had not Moser subsequently become

aware of facts indicating that ... the signature contained on the decedent's Will is not the signature of the decedent and constitutes a forgery; that the Will contained a false attestation clause; that the decedent was dead when the subscribing witnesses signed the Will; that the defendant Irvin Pollin had typed the Will; that one of the subscribing witnesses (Laura Monserrat) had signed her name as a witness to the decedent's Will, without having spoken with the

decedent, without having seen the decedent conscious, without having heard the decedent declare the instrument to be his Will and without having seen the decedent sign the Will; that both of the subscribing witnesses had executed false witness affidavits; and that the defendant Anne Sisko Pollin had submitted a false probate petition and false witness affidavits to the Surrogate's Court.

Compl. ¶ 10. This newly discovered evidence prompted Moser to pursue concurrent legal action in two courts concerning the validity of the Will: the Surrogate's Court and the United States District Court for the Eastern District of New York.

## PROCEDURAL HISTORY

### I. The Surrogate's Court Proceeding

On March 4, 1998, Moser petitioned the Surrogate's Court, *inter alia*, to withdraw her Waiver and Consent to Probate, to reopen probate proceedings so as to vacate the 1994 Probate Decree, and for an award of compensatory and punitive damages (the "Vacatur Petition"). Following discovery and several depositions, in a decree dated January 12, 1999, the Surrogate's Court entered summary judgment on the Vacatur Petition against Moser.

The Supreme Court of New York, Appellate Division, Second Department reversed on the grounds that Moser had "raised issues of fact with regard to the procurement of [her] waiver and consent, as well as sufficient evidence pointing to the invalidity of the will, to open probate." *In re Sisko*, 270 A.D.2d 276, 277, 704 N.Y.S.2d 114, 115 (2d Dep't 2000). A trial on the Vacatur Petition was directed to proceed.

On August 2, 2000, the Surrogate's Court granted Moser leave to amend the Vacatur Petition in order to augment factual assertions and to request that a con-

structive trust be imposed on all of the decedent's assets presently held by A.S. Pollin (the "Amended Vacatur Petition"). Moser further inserted into the Amended Vacatur Petition two causes of action under New York law—fraudulent concealment and constructive fraud—both of which were alleged to have been committed by all of the defendants named in this appeal.

At oral argument, we were informed by counsel for both parties that the Surrogate's Court had not yet set a date for trial on the Amended Vacatur Petition and likely would not do so in the near future.

## II. The Federal Diversity Action

The complaint in the instant diversity action ("the Complaint") was filed by Moser on April 25, 2000, in the United States District Court for the Eastern District of New York. Its factual allegations are identical to those contained in the Amended Vacatur Petition, though the Complaint purports to set forth a total of seven causes of action under New York law against the defendants. Counts One through Four allege fraud and concealment by the defendants; Count Five alleges constructive fraud by the defendants; Count Six is not a distinct cause of action but seeks to impose a constructive trust on all of the decedent's assets presently held by A.S. Pollin; and Count Seven alleges that Cerrone committed perjury in violation of New York Judiciary Law § 487. Besides compensatory damages totaling $7.5 million, Moser seeks punitive damages against all the defendants and an additional $4.5 million in treble damages against Cerrone under Count Seven.

On October 10, 2000, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the defendants collectively moved to dismiss the Complaint for lack of subject matter jurisdiction, failure to state a claim, and res judicata. The defendants also moved in the alternative to stay Moser's federal action pending resolution of the Amended Vacatur Petition before the Surrogate's Court. On an individual basis, Irvin Pollin further moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. On October 12, 2000, Cerrone moved to dismiss the Complaint for failure to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b).

Oral argument on the motions was held on August 22, 2001. In a ruling delivered from the bench that day and later summarized in a written order, the District Court found that it possessed subject matter jurisdiction over Moser's claims, but that nonetheless "the Rule 12 motions [should be] stayed pending the outcome of the proceeding currently before the Surrogate's Court, Queens County."[1]

This timely appeal followed.

## DISCUSSION

Questions of subject matter jurisdiction are reviewed *de novo*. *See Sol v. I.N.S.*, 274 F.3d 648, 650 (2d Cir.2001). A plaintiff must prove the existence of subject matter jurisdiction by a preponderance of the evidence. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When subject matter jurisdiction is challenged, we are free to consider materials extrinsic to the complaint. *See Phifer v. City of N.Y.*, 289 F.3d 49, 55 (2d Cir. 2002).

1. The District Court additionally denied Cerrone's Rule 9(b) motion on the merits. That ruling, however, has not been appealed.

## I. The Probate Exception to Federal Diversity Jurisdiction

This action formally satisfies the statutory requisites of federal diversity jurisdiction: There is complete diversity between the parties and an amount in controversy exceeding $75,000. *See* 28 U.S.C. § 1332(a)(1). Nevertheless, the Supreme Court has held that "probate matters" are excepted from the scope of federal diversity jurisdiction, "the reason being that the equity jurisdiction conferred by the Judiciary Act of 1789 ... which is that of the English Court of Chancery in 1789, did not extend to probate matters." *Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946). We have described the jurisdictional exception recognized in *Markham* as " 'too well established a feature of our federal system to be lightly discarded.' " *Ashton v. Josephine Bay & C. Michael Paul Found., Inc.*, 918 F.2d 1065, 1071 (2d Cir.1990) (quoting *Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir.1982)).

■ A two-part inquiry is used to determine whether a particular lawsuit implicates "probate matters" such that the probate exception to federal diversity jurisdiction applies. An affirmative answer to either prong requires that the case be dismissed from federal court for lack of subject matter jurisdiction. First, is the federal district court sitting in diversity being asked to directly probate a will or administer an estate? These functions are "purely probate" in character and are considered to be categorically outside the jurisdiction of the federal courts. *See Markham*, 326 U.S. at 494, 66 S.Ct. 296; *Ashton*, 918 F.2d at 1071. Of course, since few practitioners would be so misdirected as to seek, for example, letters testamentary or letters of administration from a federal judge, the first prong of the probate exception is rarely, if ever, violated.

On the other hand, it would not at all be surprising for a diversity action filed in federal district court to be *indirectly* related to the probate of a will or the administration of an estate. The instant appeal, as we determine *infra*, presents just such a factual circumstance. In respect of lawsuits that are "probate-related" rather than purely probate in character, the Supreme Court has found that some but not all such suits fall categorically within the probate exception. *Markham*, 326 U.S. at 494, 66 S.Ct. 296. Thus, the second prong of the probate exception asks whether entertaining the action would cause the federal district court to "interfere with the probate proceedings or assume general jurisdiction of the probate or control of property in the custody of the state court." *Id.* Only in those three enumerated situations must a probate-related case be dismissed from federal court for lack of subject matter jurisdiction. *See Dulce v. Dulce*, 233 F.3d 143, 145 (2d Cir.2000); *Ashton*, 918 F.2d at 1072. This "interference prong" is in practice the workhorse of the probate exception.

## II. Analysis

To begin, we believe this lawsuit could accurately be categorized as "purely probate" in character were it not for the cause-of-action labels used by Moser in her complaint. *Cf. Moore v. Graybeal*, 843 F.2d 706, 710 (3d Cir.1988); *Dragan*, 679 F.2d at 716–17. Rather than claim outright that the Will is invalid and thus the decedent's estate should pass to her by intestacy, Moser avers that the defendants have committed various torts against her in connection with the Will's probate and have thereby wrongfully deprived her of her inheritance. Whether or not this diversity action is technically one for fraudulent concealment and constructive fraud, it is in substance nothing more than a thinly

veiled will contest. *See Graybeal,* 843 F.2d at 710 ("Regardless of how [the plaintiff] characterizes her claim, she is seeking in substance to invalidate the will ...."). Had the Complaint remained identical in all respects except that the federal court was asked to set aside the Will and formally declare an intestacy, we have little doubt but that the first prong of the probate exception would require dismissal of the Complaint for lack of subject matter jurisdiction.

We need not decide the relevance of labels in the probate exception context, however, to resolve this particular case. Instead, we assume that Moser's lawsuit is probate-related rather than purely probate in character. Doing so requires us to apply only the interference prong of the probate exception. An impermissible interference for purposes of the probate exception might arise in one of three ways: if, by adjudicating the complaint, the federal district court (1) "interferes with the probate proceedings;" (2) "assumes general jurisdiction of the probate;" or (3) asserts "control of property in the custody of the state court." *Markham,* 326 U.S. at 494, 66 S.Ct. 296; *see* 13B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3610 (2d ed.1984).

We may immediately eliminate from consideration the third category of interference as there are presently no assets of the decedent within the custody of the Surrogate's Court. We may also eliminate from consideration the second category of interference—assuming "general jurisdiction of the probate." This arises when the federal district court sitting in diversity entertains a cause of action that "under state law ... would be cognizable only by the probate court." *Lamberg v. Callahan,* 455 F.2d 1213, 1216 (2d Cir. 1972).[2] In New York, the Surrogate's Courts share concurrent subject matter jurisdiction with the state's court of general jurisdiction, the Supreme Court. *See* N.Y. Const. art. VI, §§ 7, 12; *Pollicina v. Misericordia Hosp. Med. Ctr.,* 82 N.Y.2d 332, 339, 604 N.Y.S.2d 879, 624 N.E.2d 974, 977 (1993); *In re Estate of Malloy,* 278 N.Y. 429, 432, 17 N.E.2d 108, 109 (1938); *see also Dulce,* 233 F.3d at 147 (recognizing holding of *In re Estate of Malloy* ). There thus exists no probate jurisdiction belonging exclusively to the Surrogate's Court for the District Court improperly to usurp.[3]

All that remains, then, is to decide whether Moser's federal diversity suit against the defendants would "interfere with the probate proceedings" concerning

---

**2.** *Lamberg's* formulation of the second category of interference has been dubbed the "route test" for the manner in which it ties the probate exception to the route the case would have taken had it instead been filed in the relevant state court system. *See* Peter Nicolas, *Fighting the Probate Mafia: A Dissection of the Probate Exception to Federal Court Jurisdiction,* 74 S. CAL. L.REV. 1479, 1489 (2001). This Circuit is not alone in its use of the route test. *See Bedo v. McGuire,* 767 F.2d 305, 306 (6th Cir.1985); *Rienhardt v. Kelly,* 164 F.3d 1296, 1300 (10th Cir.1999).

**3.** While we have recognized that, as a practical matter, "[i]t is the policy of the New York courts to concentrate in the hands of the Surrogate all matters affecting the administration of estates," *Beach v. Rome Trust Co.,* 269 F.2d 367, 372 (2d Cir.1959), we have also held that "the mere internal arrangement of the state courts"—even if it results "in the effectively exclusive jurisdiction of the 'probate' court" over certain causes of action—is "irrelevant to the existence of power [by the federal courts] to hear the cause." *Id.* at 373; *see also Celentano v. Furer,* 602 F.Supp. 777, 780 (S.D.N.Y.1985) ("[A] policy engaged in by judges of deferring to another court possessed of concurrent jurisdiction cannot vitiate the Constitutional grant of jurisdiction to the State Supreme Court.").

the Amended Vacatur Petition concurrently pending before the Surrogate's Court. Should the federal lawsuit reach final judgment first and Moser successfully litigate all aspects of her case therein, the District Court will have concluded that the defendants committed fraudulent concealment and constructive fraud. Such a conclusion would be supported by findings of fact that accord with the core allegations contained in the Complaint: that the signature of the decedent on the Will is a forgery; that at least one of the attesting witnesses did not actually witness the Will's execution; that the Will was typed by one of the defendants; that all of the defendants knew of the Will's infirmities prior to its admission to probate in 1994; and that nonetheless the defendants concealed their knowledge from Moser and the Surrogate's Court.

By operation of collateral estoppel and res judicata, each of these final determinations by the District Court would be binding on the proceeding still pending before the Surrogate's Court. *See Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 467 N.E.2d 487, 490 (1984) ("To be sure, it is a fundamental principle that 'a judgment rendered jurisdictionally and unimpeached for fraud shall be conclusive, as to the questions litigated and decided, upon the parties thereto and their privies, whom the judgment, when used as evidence, relieves from the burden of otherwise proving, and bars from disproving, the facts therein determined.'") (quoting *Fulton County Gas & Elec. Co. v. Hudson River Tel. Co.*, 200 N.Y. 287, 296–97, 93 N.E. 1052, 1055–56 (1911)). What is truly significant for purposes of the probate exception's interference prong—and in our view ultimately dispositive—is the totality with which the District Court's judgment will predetermine the result to be reached by the Surrogate's Court in respect of the Amended Vacatur Petition pending before it.

■ In that petition, Moser seeks to withdraw her Waiver and Consent to Probate and thereby vacate the 1994 Probate Decree. New York law provides that "[a] party seeking to set aside a probate decree entered upon his consent must show that such consent was obtained by fraud or overreaching, [or] was the product of misrepresentation or misconduct, or that newly-discovered evidence, clerical error or other sufficient cause justifies the reopening of the decree." *In re Hall*, 185 A.D.2d 322, 322, 586 N.Y.S.2d 285, 286 (2d Dep't 1992) (internal citations omitted). If the District Court finds that the defendants committed fraudulent concealment and constructive fraud in connection with the Will and its probate, the basis for vacating the 1994 Probate Decree will already have been conclusively established. In short, the result of Moser's federal diversity suit wholly dictates the result of the Amended Vacatur Petition before the Surrogate's Court.

We find this to be a clear instance of an impermissible interference for purposes of the probate exception to federal diversity jurisdiction. Any other conclusion would render meaningless the Supreme Court's admonition that federal courts sitting in diversity may not "interfere with the probate proceedings" concurrently pending before a state court. *Markham*, 326 U.S. at 494, 66 S.Ct. 296. Indeed, we have previously noted that "[i]t has long been settled by the Supreme Court that federal equity jurisdiction will not be entertained ... [where] the effect would be to interfere with the performance of the probate court's functions." *Lamberg*, 455 F.2d at 1216. Were the District Court to entertain Moser's federal diversity action, the Surrogate's Court would be left to perform no function at all with respect to the pending Amended Vacatur Petition. In our

view, the rendering of a state probate court proceeding into a rubber-stamping enterprise exemplifies the kind of jurisdictional conflict that is to be avoided by means of the interference prong of the probate exception.[4]

In opposition, Moser relies principally on the Supreme Court's statement in *Markham* that the probate exception does not preclude a federal court from

> exercising its jurisdiction to adjudicate rights in [estate] property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.

326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946). We do not understand this passage, even in isolation, to mean that there is no impermissible interference in respect of the probate exception if the concurrent federal adjudication resolves *all* of the matters pending before the state probate court. Indeed, in the paragraph immediately following the above quote, the Supreme Court applied the very rule it had just pronounced. The *Markham* Court found no reason to invoke the probate exception on the facts before it because the preclusive effect of the federal judgment at issue there would be "to leave undisturbed the orderly administration of decedent's estate in the state probate court and to decree petitioner's right in the property to be distributed after its administration." *Id.* at 495, 66 S.Ct. 296. Thus, *Markham* itself supports the conclusion that a federal court impermissibly interferes with a concurrent probate proceeding if its judgment would supplant the functions of the state probate court.

Moser also cites three prior decisions of this Court in which we found that a probate-related federal action did not interfere with pending probate proceedings: *Giardina v. Fontana*, *Dulce v. Dulce*, and *Ashton v. Josephine Bay & C. Michael Paul Foundation, Inc.* Significantly, not one of these three cases involved challenges to the validity of a will. But even apart from this substantial distinction, Moser's reliance on these decisions is misplaced.

In *Giardina v. Fontana*, 733 F.2d 1047 (2d Cir.1984), the plaintiff sought a federal declaratory judgment nullifying and/or rescinding an assignment of her interest in her deceased father's estate. Although we found that "[t]his relief could be granted without in any way interfering with the probate proceedings [concurrently pending] in Florida," we did so because the plaintiff's claim for nullification and/or rescission of the assignment was not before the Florida probate court in the first place. *Id.* at 1050. In fact, the Florida probate court had already dismissed that claim for want of jurisdiction. *See id.* at 1049–50. There existed no impermissible interference in *Giardina* for the simple reason that there was no state probate proceeding with which the federal action could interfere.

Similarly, in *Dulce v. Dulce*, 233 F.3d 143 (2d Cir.2000), the plaintiff sought a federal declaratory judgment that he was "entitled to receive $67,000 from [the decedent's] estate." *Id.* at 144. The decedent's will, however, had not yet been submitted for probate and so, as in *Giardina*,

---

4. Our holding comports with the interpretation of the probate exception applied in the Fifth and Eleventh Circuits. The position of those courts is that a federal court categorically does not have jurisdiction over any state

law claim that rests upon a challenge to the validity of a will instrument. *See Blakeney v. Blakeney*, 664 F.2d 433, 434 (5th Cir.1981); *Mich. Tech Fund v. Century Nat'l Bank of Broward*, 680 F.2d 736, 739 (11th Cir.1982).

there existed no pending state proceeding with which the federal judgment could interfere. *See id.* Furthermore, even in the event that a probate proceeding could have arisen in the future, we emphasized that the federal court's declaratory judgment would amount to "[a] simple declaration that the plaintiff is a judgment creditor of the estate ... [and] would have no capacity to interfere with the state probate court's administration of the estate or discharge of its duties." *Id.* at 148. Rather than be left with no function to perform at all, the state probate court would still be faced with its essential tasks. *See id.* ("Whether the plaintiff's share would actually result in his receipt of money, and how much, would depend on the probate court's findings as to the extent of the estate's assets and the extent of the competing claims with varying priorities.").

Nor is Moser's position aided by our decision in *Ashton v. Josephine Bay & C. Michael Paul Foundation, Inc.*, 918 F.2d 1065 (2d Cir.1990). *Ashton* involved a federal injunction that barred defendants from "instituting or prosecuting any proceeding or asserting any claim in any state or federal court against the assets of the [Raymonde I. Paul estate]." *Id.* at 1068. There was at the time of the injunction an accounting proceeding pending before a Florida probate court with respect to the estate of C. Michael Paul, the sister of Raymonde. We determined that an injunction in respect of one estate would not affect the ability of the state probate court to "continue to administer [a different] Estate, including any accounting, free from federal interference." *Id.* at 1072. That the probate exception was not at issue in such circumstances is not surprising.

Finally, Moser argues that *In re Estate of Piccione,* 57 N.Y.2d 278, 456 N.Y.S.2d 669, 442 N.E.2d 1180 (1982), deprives the Surrogate's Court of subject matter jurisdiction over her tort causes of action against the defendants.[5] *Piccione* stands for the proposition that the Surrogate's Court lacks jurisdiction over a case only if it is "abundantly clear that the matter in controversy in no way affects the affairs of the decedent or the administration of his estate." *Id.* at 288, 456 N.Y.S.2d 669, 442 N.E.2d at 1184 (internal quotations mark omitted); *see United States v. Pikna,* 880 F.2d 1578, 1583 (2d Cir.1989) (interpreting *Piccione* to mean that the Surrogate's Court will lack jurisdiction only where "the relationship of the dispute to the estate is attenuated"). If anything, *Piccione* is considered to have *expanded* the jurisdiction of the Surrogate's Court such that, rather than finding jurisdiction based solely on the type of relief requested, the Surrogate will instead look broadly to the suit's overall connection to the decedent's estate. *See* 1 WARREN'S HEATON ON SURROGATE'S COURTS § 2.04(2) (6th rev. ed.2002); 1 JOSEPH A. COX, JOSEPH T. ARENSON & STANDISH F. MEDINA, NEW YORK CIVIL PRACTICE § 201.12 (Mar.2002) ("Since the decision in *In re Piccione,* the trend has been to find that the Surrogate's Court has subject matter jurisdiction over a particular matter pending before it."). Here, not only was the defendants' alleged fraud committed in connection with the 1994 probate of the Will and the distribution of the decedent's assets thereunder, but also the very focus of Moser's claims against the defendants is to establish the Will's invalidity

---

**5.** This contention strikes us as specious in light of Moser's own Amended Vacatur Petition before the Surrogate's Court. Therein she pleads one count of fraudulent concealment and another count of constructive fraud—these are the same torts as are set forth in Moser's federal complaint. Under both counts, all of the defendants are alleged to have committed the tort in question.

and to vindicate her status as the rightful distributee of her father's estate.

Other factors further convince us that the Surrogate's Court, having already before it a petition to revoke the Will as fraudulent, additionally holds the power to adjudicate Moser's action for compensatory and punitive damages. First, by statute, the Surrogate's Court is empowered to

> exercise full and complete general jurisdiction in law and equity to administer justice in all matters relating to estates and the affairs of decedents, and ... to try and determine all questions, legal or equitable, arising between any party and any other person having any claim or interest therein, over whom jurisdiction has been obtained, as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires.

N.Y. S.C.P.A. § 201(3); *see also In re Estate of Ryan*, 311 N.Y.S.2d 719, 722, 63 Misc.2d 415, 417 (Sur.Ct.1970) (reading N.Y. S.C.P.A. § 201(3) to demonstrate that "the intent of the Legislature is clearly to give the Surrogate's Court sufficiently wide jurisdiction so that it may make complete dispositions of any and all matters affecting the estate of a decedent and thus make it unnecessary for parties to go to different courts in order to obtain the relief sought"). Second, the incidental powers of the Surrogate's Court include "all of the powers that the supreme court would have in like actions and proceedings." *Id.* § 209(10); *see also In re Will of Mussman*, 218 N.Y.S.2d 236, 237, 29 Misc.2d 462, 462 (Sur.Ct.1961) ("The Surrogate has incidental powers with respect to all matters subject to the cognizance of the court, according to the course and practice of a court having ... common law jurisdiction of such matters, except as

otherwise prescribed by statute.") (internal quotation marks omitted). Third, despite the existence of concurrent subject matter jurisdiction, "the Supreme Court ordinarily refrains from exercising the concurrent jurisdiction where all the relief requested may be obtained in the Surrogate's Court where the matter is pending." 25 CARMODY WAIT 2D, NEW YORK PRACTICE § 149:118 (1996); *see also In re Estate of Moody*, 6 A.D.2d 861, 176 N.Y.S.2d 1 (1st Dep't 1958) ("[I]n the absence of special circumstances or where the Surrogate has already acted, the Supreme Court has exercised its concurrent jurisdiction sparingly.").

In the final analysis, Moser asserts no valid reason why this probate-related case should be litigated in federal court. The dispute between the parties turns singularly on the validity or invalidity of the decedent's will. Expertise in this specialized inquiry falls squarely within the province of the Surrogate's Court, a forum that can offer full legal relief for either side as well as prior judicial experience with the decedent's estate in particular. By filing concurrent legal actions in two courts, Moser undoubtedly seeks to obtain a favorable federal judgment on the Complaint to use in the Surrogate's Court in its pending disposition of the Amended Vacatur Petition. Such an interference with the functions of a state probate court is, we conclude, prohibited by the probate exception to federal diversity jurisdiction.

## CONCLUSION

To summarize, we find that on the facts of this case the probate exception to federal diversity jurisdiction bars the District Court from asserting subject matter jurisdiction over the Complaint. To conclude otherwise would result in an impermissible interference with the proceedings concurrently pending before the New York State

Surrogate's Court for Queens County. The District Court's order staying resolution of the defendants' Rule 12 dismissal motions is vacated and we remand to the District Court with instructions to dismiss the Complaint for lack of federal subject matter jurisdiction.