*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0316P (6th Cir.)
File Name: 04a0316p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

R OBIN L EPARD,
　　　　*Plaintiff-Appellant,*

　　　*v.*

NBD B ANK, a Division of
Bank One; W ALTER O. K OCH;
J EREMY H. L EPARD; and
P ATRICIA C. L EPARD,
　　　　*Defendants-Appellees.*

No. 02-1887

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-72296—George E. Woods, District Judge.

Argued: August 4, 2004

Decided and Filed: September 16, 2004

Before: CLAY and GILMAN, Circuit Judges; MATIA,
Chief District Judge.[*]

_____

[*] The Honorable Paul R. Matia, Chief United States District Judge for
the Northern District of Ohio, sitting by designation.

_____

## COUNSEL

**ARGUED:** Jeffrey D. Meek, JEFFREY D. MEEK &
ASSOCIATES, Livonia, Michigan, for Appellant. Thomas
G. Peck, SIMON, GALASSO & FRANTZ, Troy, Michigan,
George G. Kemsley, BODMAN, LONGLEY & DAHLING,
Detroit, Michigan, for Appellees. **ON BRIEF:** Jeffrey D.
Meek, JEFFREY D. MEEK & ASSOCIATES, Livonia,
Michigan, for Appellant. Thomas G. Peck, Thomas C.
Wisehart, Jr., SIMON, GALASSO & FRANTZ, Troy,
Michigan, George G. Kemsley, BODMAN, LONGLEY &
DAHLING, Detroit, Michigan, for Appellees. Jeremy H.
Lepard, Waianae, Hawaii, pro se.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge. Robin Lepard,
proceeding pro se, brought suit against the defendants based
upon their alleged unlawful interference with the financial
assistance that Robin had been receiving from her mother.
The named defendants were the National Bank of Detroit, a
division of Bank One (NBD), Walter Koch, Jeremy Lepard,
and Patricia Lepard. Koch had served as the attorney for
Lepard's parents, Cecil and Elizabeth Lepard, and was the
drafter of Dr. Cecil Lepard's trusts. He later served as
counsel for the trusts' cotrustees, NBD and Lepard's mother
Elizabeth. Jeremy Lepard is Robin's half-brother and Patricia
Lepard is Jeremy's wife.

The district court dismissed Robin's ten-count complaint in
its entirety. Counts one and two were dismissed with
prejudice for failure to state a claim under Michigan law,
counts three through seven were dismissed with prejudice as
barred by the applicable statute of limitations, and counts

eight through ten were dismissed without prejudice for lack of subject matter jurisdiction.

Robin, now represented by counsel, argues on appeal that the district court committed reversible error with respect to six of the ten counts in her complaint: count two (alienation of affections), count three (intentional infliction of emotional distress), count six (theft and extortion), count eight (breach of fiduciary duty), count nine (theft and undue influence resulting in theft), and count ten (breach of fiduciary duty and abuse of power). Counts two and three seek relief against all of the named defendants, counts six and eight seek relief against NBD only, and counts nine and ten seek relief against Jeremy and Patricia only. (Robin does not appeal the dismissal of count one (wastage of assets), count four (slander and defamation), count five (discrimination), or count seven (attorney malpractice)). For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

As described by Robin in her brief, "[t]he crux of [her] allegations is that trust officials from Bank One and Mr. Koch . . . worked with and collaborated with her half-brother, Jeremy H. Lepard and his wife Patricia, to manipulate and control Ms. Lepard's elderly mother, Elisabeth F. Lepard, so that her mother would discontinue gifting . . . $40,000 *per annum* to Robin and her three children."

Robin filed a 132-page handwritten complaint on May 19, 2000. That complaint was superseded over the following year by a 97-page "first amended complaint," an 89-page "final amended complaint version one," and a 117-page "final amended complaint version two." In July of 2001, Robin designated the "final amended complaint version one" as her operative pleading.

Motions to dismiss were filed by all of the defendants, to which Robin filed a 20-page response. The matter was then

referred to a magistrate judge for a Report and Recommendation (R & R). In the R & R, the magistrate judge noted that "[a]ll of the documents filed by [Robin were] handwritten, lengthy, composed in a narrative form, and contain[ed] numerous conclusory assertions." Rule 8(a) of the Federal Rules of Civil Procedure specifies that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Although "[n]o technical forms of pleading or motions are required[,]" Rule 8(e) specifies that "[e]ach averment of a pleading shall be simple, concise, and direct." The magistrate judge concluded that Robin's complaint "fail[ed] to comply with these directives." Because Robin was proceeding pro se, however, the magistrate judge considered her allegations despite her failure to comply with Rule 8.

The magistrate judge heard oral argument on the motions in December of 2001. He issued an 18-page R & R later that month, concluding that all of Robin's claims should be dismissed. Robin objected. After review, the district court adopted the R & R and dismissed Robin's complaint. This appeal followed. (The district court initially found that Robin had failed to timely file her notice of appeal. In an order entered on February 10, 2003, however, this court determined that Robin's notice of appeal was in fact timely filed.)

## II. ANALYSIS

### A. The district court did not err in dismissing Robin's claim for alienation of affections

Michigan does not recognize a cause of action for alienation of affections. *See* Mich. Comp. Laws Ann. § 600.2901 ("The following causes of action are abolished: (1) alienation of the affections of any person, animal, or thing capable of feeling affection, whatsoever[.]"). The district court therefore dismissed Robin's alienation-of-affections cause of action for failure to state a claim upon which relief

can be granted. *See* Fed. R. Civ. P. 12(b)(6). This court conducts a de novo review of complaints dismissed pursuant to Rule 12(b)(6). *Mayer v. Mylod*, 988 F.2d 635, 637 (6th Cir. 1993). "All factual allegations are considered to be true." *Id.* at 638. "If an allegation is capable of several inferences, the allegation must be construed in a light most favorable for the plaintiff." *Id.*

For the first time on appeal, Robin argues that her Michigan-law claim for alienation of affections was actually a New Mexico-law claim for tortious interference. As evidence of this intention, Robin points out that she attached a copy of *Doughty v. Morris*, 871 P.2d 380 (N.M. Ct. App. 1994), to her final amended complaint. *Doughty* is a New Mexico case that "extend[s] the line of New Mexico cases acknowledging tortious interference causes of action to include a cause of action against those who intentionally and tortiously interfere with an expected inheritance." *Id.* at 383.

Robin argues in her appellate brief that the "vast majority of the acts complained about . . . occurred after her mother was moved to New Mexico by the Defendants in late 1991." In the district court, however, she alleged that "[t]he matter giving rise to this Complaint occurred first and primarily in Wayne County, Michigan." And her October 26, 2000 response to the defendants' motions to dismiss flatly asserted that "[t]he primary matters raised in the Complaint took place in Michigan and were not in the jurisdiction of the court in Santa Fe, New Mexico . . . ."

This court "has repeatedly held that it will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice." *United States v. Ninety-Three (93) Firearms*, 330 F.3d 414, 424 (6th Cir. 2003) (quotation marks omitted). Based upon Lepard's inconsistent positions on this issue, we do not believe that a plain miscarriage of justice would occur by affirming the district court's dismissal of her alienation-of-affections claim.

**B.  Robin's claims for emotional distress and conversion were time-barred**

Regarding Robin's cause of action for intentional infliction of emotional distress, the magistrate judge concluded as follows:

> Count three, which asserts intentional infliction of emotional distress, is governed by a three year statute of limitations. *See* Mich. Comp. Laws Ann. § 600.5085(9); *Nelson v. Ho*, 564 N.W.2d 482, 484 (Mich. App. 1997). Plaintiff claims that defendants committed intentional infliction of emotional distress "from 1984 and . . . throughout the 1990s." Any claim(s) for emotional distress occurring prior to June 4, 1998, three years before Plaintiff filed this complaint, should be dismissed with prejudice.

In her brief, Robin argues that the district court erroneously adopted the magistrate judge's mistaken finding that the complaint was filed on June 4, 2001 when, in fact, the action was filed on May 19, 2000. But even if May 19, 2000 is the operative date, the three-year statute of limitations would still bar Robin's claim. The latest conduct allegedly supporting this cause of action occurred in March of 1997, when NBD purportedly made reservations for Jeremy and Patricia to stay at the same country club as Robin after they returned to Michigan for the funeral of Robin's mother.

Regarding Robin's cause of action for conversion, the magistrate judge made the following determination:

> Count six, for "extortion and theft," could be construed to assert a cause of action for conversion. (Extortion is a criminal cause of action under Michigan law. See Mich. Comp. Laws Ann. § 750.213.) The tort of conversion has a three year statute of limitations pursuant to Mich. Comp. Laws Ann. § 600.5805(9). *See Brennan v. Edward D. Jones & Co.*, 626 N.W.2d 917, 919 (Mich.

App. 2001). Accordingly, any claims for conversion which Plaintiff claims to have occurred before June 4, 1998, should be dismissed with prejudice.

The factual bases for this claim were (1) NBD's threatened legal action if Robin did not return funds that she impermissibly withdrew from her mother's account at the bank, and (2) NBD's alerting Robin that her father's trust might soon be liquidating one of its assets, a Washington, D.C. apartment occasionally used by one of Robin's children. Neither of these events occurred within the three-year period preceding the filing of Robin's suit in May of 2000.

At the hearing before the magistrate judge, Robin claimed that she did not learn that she had any legal claims against defendants until "recently." The magistrate judge considered whether any equitable tolling of the applicable statutes of limitations was called for under Michigan law. He concluded that "[t]he record demonstrates that had she exercised reasonable diligence, and assuming the facts as she presents them to be true, she should have discovered that she had a possible cause of action against these defendants nearer to the time when the alleged wrongs occurred." We find no basis to conclude that this determination by the magistrate judge was clearly erroneous.

**C. The district court lacked subject matter jurisdiction regarding Robin's remaining claims**

The district court dismissed Robin's claims in counts eight through ten for lack of subject matter jurisdiction, citing the "probate exception" to diversity jurisdiction. We review de novo a district court's determination that it lacks subject matter jurisdiction. *Good v. Ohio Edison Co.*, 149 F.3d 413, 418 (6th Cir. 1998).

"The probate exception is a practical doctrine designed to promote legal certainty and judicial economy by providing a single forum of litigation, and to tap the expertise of probate

judges by conferring exclusive jurisdiction on the probate court." *Cenker v. Cenker*, 660 F. Supp. 793, 795 (E.D. Mich. 1987). "Under the so-called 'probate exception,' even when the requirements of diversity jurisdiction have been met – the parties are diverse and the amount in controversy exceeds the jurisdictional threshold, *see* 28 U.S.C. § 1332(a)(1) (2004) – a federal court nonetheless lacks jurisdiction over cases involving probate matters." *Storm v. Storm*, 328 F.3d 941, 943 (7th Cir. 2003); *see also Markman v. Allen*, 326 U.S. 490, 494 (1946) ("[A] federal court has no jurisdiction to probate a will or administer an estate.").

"The standard for determining whether federal jurisdiction may be exercised is whether under state law the dispute would be cognizable only by the probate court." *McKibben v. Chubb*, 840 F.2d 1525, 1529 (10th Cir. 1988) (quotation marks omitted). This court applied the "probate exception" in *Bedo v. McGuire*, 767 F.2d 305 (6th Cir. 1985), holding that the district court lacked subject matter jurisdiction over a claim for breach of fiduciary duty brought by the beneficiaries of the estate against the executrix because, under Ohio law, "exclusive jurisdiction of probate matters, including breach of fiduciary duty, is vested in the Probate Court." *Id.* at 306.

As the magistrate judge noted, "Count eight is asserted against Bank One for breach of fiduciary duty regarding Dr. Lepard's [19]75 and [19]79 trusts." Claims regarding the administration of a trust fall squarely within the exclusive jurisdiction of the Michigan probate courts. *See* Mich. Comp. Laws Ann. § 700.1302 ("The [probate] court has exclusive legal and equitable jurisdiction [over] . . . (b) [a] proceeding that concerns . . . the administration . . . of a trust[.]").

Regarding counts nine and ten of the complaint, the magistrate judge summarized Robin's claims as follows:

Counts nine and ten are asserted against Jeremy and Pat Lepard for theft and undue influence resulting in theft

and for breach of fiduciary duties and abuses of power. *See* Compl. at 80-81. Plaintiff claims that they caused Mrs. Lepard to give to them and their children assets that Mrs. Lepard wanted to give to Plaintiff, and that they breached their duties as fiduciaries for Mrs. Lepard.

The magistrate judge concluded that these counts were "connected inextricably with the probate of the estates and other issues ancillary to probate." We agree. "The [probate] exception applies both to purely probate matters, and to matters ancillary to probate in the practical sense that allowing it [the case] to be maintained in federal court would impair the policies served by the probate exception to diversity jurisdiction." *Cenker*, 660 F. Supp. at 795 (quotation marks omitted); *see also Manning v. Amerman*, 582 N.W.2d 539, 540 (Mich. Ct. App. 1998) (affirming the trial court's ruling that the trust beneficiaries' claims for "tortious interference with a prospective advantage/expectancy, tortious interference with a trust/contractual relationship, intentional and negligent infliction of emotional distress, legal malpractice, breach of contract, and unjust enrichment" were within the exclusive jurisdiction of the probate court).

Robin seeks to avoid the probate exception by claiming an interest in an annuity allegedly taken out by her mother for Robin's benefit. This argument, however, is raised for the first time on appeal and therefore will not be entertained "unless our failure to consider the issue will result in a plain miscarriage of justice." *United States v. Ninety-Three (93) Firearms*, 330 F.3d 414, 424 (6th Cir. 2003) (quotation marks omitted). We find no miscarriage of justice under these circumstances because, at the very least, Robin's annuity argument is closely related to her other probate and fiduciary issues. *See Rice v. Rice Foundation*, 610 F.2d 471, 477-78 (7th Cir. 1979) (holding that abstention is appropriate in cases on the periphery of the probate exception).

### III.   CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.