NOT FOR PUBLICATION
File Name: 05a0510n.06
Filed: June 15, 2005

No. 03-1671

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ALESSANDRO F. UZIELLI,

      **Plaintiff-Appellant,**

v.

**SETH E. FRANK; JOSEPH COOPER,**
preliminary personal representative of the
estate of Philip A. Uzielli,

      **Defendants-Appellees.**

_____/

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

BEFORE: SUHRHEINRICH and BATCHELDER, Circuit Judges; and McKEAGUE,
District Judge[*]

      **SUHRHEINRICH, J:** Plaintiff-Appellant Alessandro F. Uzielli, ("Plaintiff"), appeals from the decision of the district court dismissing his complaint for lack of subject matter jurisdiction based on the probate exception. For the following reasons, we **AFFIRM,** although for reasons different than those stated by the district court.

**I.**

      Plaintiff resides in the State of California. On January 25, 2001, Plaintiff and his uncle, Philip Uzielli, formed Alph Company, LLC ("Alph"), under the Michigan Limited Liability Company Act, Mich. Comp. Laws § 450.4101, *et seq*. Alph's principal place of business is Detroit, Michigan.

_____

[*]The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

Plaintiff and Philip Uzielli operated Alph pursuant to an Operating Agreement whereby Plaintiff contributed 60% of the company's initial capital and received 600 Membership Units in the company (representing a 60% ownership in the company), and Philip Uzielli contributed 40% and received 400 Membership Units (representing a 40% ownership interest). The Operating Agreement designated Plaintiff as Manager of Alph and granted him control over its daily operations.

The Operating Agreement also provided that upon the death of one member, the surviving member could elect to purchase the deceased member's shares in the company as long as the option was exercised in writing within one year of the deceased member's death. The Agreement states that when the surviving member elects to purchase the deceased member's shares, the price of the membership unit "shall be their fair market value as determined by the Company's accountants." Despite this mandate, the parties disagree as to the date on which Alph's value is to be determined, i.e., the date of Philip's death or the date of the election to purchase. They also disagree as to the methodology that Alph's accountant, PricewaterhouseCoopers, LLP ("PWC"), is to use.

On August 25, 2001, Philip Uzielli died suddenly. On October 26, 2001, the Surrogate's Court of the State of New York exercised its jurisdiction over Philip Uzielli's will, which named New York residents Seth E. Frank and Joseph Cooper, ("Defendants"), as preliminary personal representatives of the estate of the deceased. On August 23, 2002, Plaintiff contacted Defendants' counsel and exercised his option to purchase the deceased's Membership Units. Plaintiff then hired Alph's accountants, PricewaterhouseCoopers, LLP ("PWC"), to perform a valuation of Alph in order to determine the company's fair market value.

On September 30, 2002, PWC prepared an engagement letter in preparation to perform the valuation of Alph. The letter stated that PWC would establish fair market value using one or more

2

of the following approaches depending on its understanding of the factual information provided: (1) income approach, using the Discounted Cash Flow method, 2) cost approach, and 3) market comparison approach. The letter also stated that PWC would determine the fair market value of Alph as of two dates: 1) August 25, 2001 (the date of Philip Uzielli's death); and 2) August 25, 2002 (the date Plaintiff exercised his option to purchase Philip Uzielli's interest in Alph). PWC indicated that the assets would be valued under the premise of "fair market value in continued use," which reflects the continued utilization of the assets in connection with all other assets. PWC then requested that Defendants sign the letter prior to beginning work on the valuation.

Defendants refused to sign the engagement letter but instead requested that PWC perform the valuation as of August 25, 2001, and that events and transactions occurring after that date be excluded from such valuation. They also indicated that they would not share in the cost of a valuation as of any other date. They further requested that PWC's analysis take into account the capital withdrawal of $1,536,184 by Alessandro Uzielli and the payment of United Kingdom withholding tax of 52,632 British pounds. In addition, Defendants requested that specific reference be made to existing or liquidated inventory in the company. Finally, Defendants requested that, in performing the valuation, PWC not apply "any discount for non-marketability, minority interest or otherwise," as such a discount would be inappropriate in the context of a buy-out between the parties.

On or about December 12, 2002, Defendants filed a motion in the Surrogate's Court of the State of New York seeking a determination of the appropriate valuation date and valuation criteria to be applied in determining the market value of Philip Uzielli's interest in Alph. The Surrogate's Court issued a citation to notify Plaintiff that it would be adjudicating those issues. On January 10,

3

2003, Plaintiff filed a diversity action in the United States District Court for the Eastern District of Michigan requesting declaratory relief as to the proper valuation of Philip Uzielli's Membership Units. On January 15, 2003, the district court issued a show cause order as to why the case should not be dismissed for lack of subject matter jurisdiction.

On February 7, 2003, Plaintiff filed an amended complaint. On March 3, 2003, Defendants filed a motion to dismiss Plaintiff's amended complaint for lack of subject matter jurisdiction. On May 1, 2003, the district court granted Defendants' motion to dismiss, stating that the action would interfere with the pending New York probate court proceedings. On May 21, 2003, Plaintiff appealed the decision of the district court. To date, this matter is still pending in the Surrogate's Court.

## II.

This Court reviews *de novo* a district court's decision to grant a motion to dismiss for lack of subject matter jurisdiction. *Joelson v. United States*, 86 F.3d 1413, 1416 (6th Cir. 1996). When a defendant moves to dismiss for lack of subject matter jurisdiction "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

## III.

Plaintiff contends on appeal that the district court erred in dismissing his cause of action for lack of subject matter jurisdiction. A district court lacks subject matter jurisdiction over an action that is purely probate, even when the traditional requirements of diversity jurisdiction have been met. *Lepard v. NBD Bank, A Division of Bank One*, 384 F.3d 232, 237 (2004) (citing *Storm v.*

4

*Storm*, 328 F.3d 941, 943 (7th Cir. 2003)). This so-called "probate exception" to diversity jurisdiction dates back to the Judiciary Act of 1789, which conferred on the federal courts the jurisdiction that existed in the English ecclesiastical courts at that time. *Markham v. Allen*, 326 U.S. 490, 494 (1946). This excluded the probating of wills and administration of estates from the federal courts' equitable jurisdiction. *Markham v. Allen*, 326 U.S. 490, 494 (1946).

The starting point in any probate exception analysis is *Markham.*[1] In *Markham,* the Supreme

---

[1]Lower courts have struggled to apply this *Markham* test. *See Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir. 1982) "(probate exception is one of the most mysterious and esoteric branches of the law of federal jurisdiction"); *Georges v. Glick*, 856 F.2d 971, 973 (7th Cir. 1988) ("the contours of the exception are vague and indistinct"); *Rice v. Rice Foundation*, 610 F.2d 471, 475 (7th Cir. 1979) ("Despite its long and undisputed viability, the probate exception is not easily applied to particular cases."); *Foster v. Carlin*, 200 F.2d 943, 948 (4th Cir. 1952) (the line of demarcation between jurisdiction of state and federal courts in probate matters is often difficult to draw); *Kittredge v. Stevens*, 126 F.2d 263, 265 (1st Cir. 1942) (as to jurisdiction in suits against executors, administrators, guardians and trustees, "not infrequently the results seem inconsistent and the language confusing").

Our Circuit stated recently in *Lepard* that "[t]he standard for determining whether federal jurisdiction may be exercised is whether under state law the dispute would be cognizable only by the probate court." 384 F.3d at 237 (quoting *McKibben v. Chubb*, 840 F.2d 1525, 1529 (10th Cir. 1988)). Under this holding, if the probate court has exclusive jurisdiction, the federal court cannot assume jurisdiction. Although at first blush *Lepard* also seems to indicate that the reverse is true – that the federal court can assert jurisdiction over any case over which the probate court does not have exclusive jurisdiction – such a reading would be inconsistent with *Markham*. Under *Markham*, the fact that the probate court does not have exclusive jurisdiction does *not* necessarily give the federal court concurrent jurisdiction. The federal court may only exercise jurisdiction if it would not interfere with probate, or assume general jurisdiction or control over probate property. *Markham*, 326 U.S. at 494.

We have also outlined factors that courts generally consider important in determining whether a suit falls inside or outside the probate exception: (1) whether the action attacks the validity of the will; (2) whether the state court proceeding has been closed; (3) whether the suit could be brought in a state court other than the probate court; and, (4) whether the suit can be characterized as *in personam*, or *in rem* or *quasi in rem*. *Bedo v. McGuire*, 767 F.2d 305, 307 (6th Cir. 1985) (Engel, J., dissenting). Although these factors were not set forth in the majority opinion, of *Bedo*, and the dissent is not clear as to whether our Circuit utilizes this approach, our probate cases suggest that we vary our analysis depending on the fact scenario and the jurisdiction involved. *See, e.g., Lepard*, 384 F.3d at 237 (holding that federal jurisdiction could not be exercised because claims for breach of fiduciary in the administration of a trust duty fall within the exclusive

Court held that a federal court may not exercise jurisdiction over a claim, even where all the normal jurisdictional requirements are met, if the court would be put in the position of probating a will or administering an estate. *Id.* at 494. However, the Court also stated that the federal courts are able to handle suits establishing the claims of claimants against a decedent's estate as long as the federal court does not interfere with the probate proceedings themselves or generally take jurisdiction over the probate itself or of the property in the custody of the state probate court. *Id.* (citations omitted). The federal court's jurisdiction also extends to situations where the district court's judgment will not interfere with the state court's possession of the probate property, except to the extent that the state court must abide by the judgment of the federal court regarding the right it adjudicated. *Id.*

jurisdiction of the Michigan probate courts and claims for theft and undue influence are inextricably connected both to probate and to issues ancillary to probate); *Bedo*, 767 F.2d at 395 (holding that the district court lacked subject matter jurisdiction over estate beneficiaries' claim against executrix for breach of fiduciary duty because, under Ohio law, "exclusive jurisdiction of probate matters, including breach of fiduciary duty, is vested in the Probate Court"); *Starr v. Rupp*, 421 F.2d 999, 1007, (6th Cir. 1970) (holding that the probate exception barred diversity jurisdiction over Plaintiff's claims that executor breached his fiduciary duties because federal jurisdiction would interfere with the prior jurisdiction of the Probate Court and conflict with the probate court's decision to approve sale of stock and a partial account, and because under Ohio law, jurisdiction of an action involving an alleged breach of fiduciary duties is lodged in the Probate Court in a *quasi in rem* proceeding); *Chubet v. Huntington Trust Company, N.A.,* 1993 WL 513914, 14 F.3D 600 (1993) (table) (recognizing that state probate court had ongoing jurisdiction and that the law of Ohio vested exclusive jurisdiction of probate matters to the probate court); *Ewald v. Citizens Fidelity Bank and Trust Co.*, 242 F.2d 319, 321 (6th Cir. 1957) (concluding that the appellants claims as to the manner in which trust property was being administered were addressed solely to the administration of the estate (*in rem*), and not to the party's right or interest in funds (*in personam*)); *Spears v. Spears*, 162 F.2d 345, 349 (6th Cir.), *cert. denied*, 332 U.S. 768 (1947) (holding that although a federal court cannot properly decline to hear issues merely because the same question is pending in a state court between the same parties, the authority to contest a will in Michigan is part of the probate procedure and not a suit inter partes, and a federal court has no jurisdiction in the accounting of an estate by executors or administrators) (citing *Waterman*, 215 U.S. at 45)); *Rogers v. Girard Trust Co.*, 159 F.2d 239, 242 (6th Cir. 1947) (holding that the federal court had diversity jurisdiction because an action for right to damages for fraud and wrongful performance of fiduciary duty is an *in personam* action to establish a personal right against a fiduciary and does not in any way affect possession of and control over the res by the Orphans Court)).

6

Under the facts in *Markham*, the plaintiff-petitioner sought to have the entire proceeds of the final estate paid over to it once the probate court concluded its work of paying taxes and settling debts, so the Court found that nothing in the petitioner's cause of action would interfere with the probate court's ability to perform those tasks and allowed the district court to exercise jurisdiction. *Id.* at 495. *Cf. Waterman v. Canal-Louisiana Bank & Trust Co.*, 215 U.S. 33, 43 (1909) (holding that although the federal court could find the amount of the residue of the estate belonged to the complainant and could be held in trust for her, it could not interfere with the probate court in determining that amount); *Turton v. Turton*, 644 F.2d 344, 346-47 (5th Cir. 1981) (distinguishing the permissible action of a federal court in issuing a declaratory judgment as to the right to a percent of the net estate from the impermissible action of that same court in determining the dollar amount of the net estate).

According to *Markham*, then, the three instances where courts should decline jurisdiction under the probate exception are: (1) where the federal court action would interfere with the probate proceedings in state court; (2) where the federal court action would assume general jurisdiction of the probate; and (3) where the federal court action would assert control of property in the custody of the state court. *Moser v. Pollin*, 294 F.3d 335, 340 (2d Cir. 2002) (citing *Markham*, 326 U.S. at 494).

It is undisputed that Plaintiff has the right to purchase the stocks of the deceased, and the parties do not dispute that this matter is "related to" probate.[2] However, Plaintiff contends that his

---

[2]New York law applies in this case. Under New York law, the state's probate court, the Surrogate Court, does not have exclusive jurisdiction. *Moser*, 294 F.3d at 341. Thus, as *Moser* points out, "the Surrogate's Courts share concurrent subject matter jurisdiction with the state's court of general jurisdiction, the Supreme Court. . . . There thus exists no probate jurisdiction belonging exclusively to the Surrogate's Court for the District Court improperly to usurp." *Id.* (citing N.Y.

7

case does not fall within the probate exception because he is merely asking the district court to adjudicate his rights under the Operating Agreement. He claims that he is simply asking the district court to decide the proper date and method of valuation of Alph's assets, and not the valuation of assets itself. Defendants counter that the district court correctly declined to exercise subject matter jurisdiction because the assertion of jurisdiction over this matter would affect the administration of the decedent's estate, and create the danger of inconsistent rulings between the courts.

Although, as Defendants point out, a federal court's direct determination of the method and date of valuation would very likely interfere with the probate proceedings because it would affect the manner in which the estate assets are valued, our adjudication of Uzielli's rights under the contract does not require us to make such determinations. While the language of the contract does not specify the date or method of valuation, it clearly leaves those determinations to "the Company's accountants" in determining the stock's fair market value. Therefore, a declaratory judgment by the federal court as to Plaintiff's rights under the contract need only determine that Plaintiff has a right to have Alph Accountants, PWC, determine the date and method of valuing the Alph stocks. Although a prior federal court judgment on the issues of the date and method of valuation would be binding on the state court, the judgment, in itself, is not interference. *See Markham*, 326 U.S. at 494. The district court's conclusion to the contrary was erroneous. Thus, we hold that the probate exception to federal jurisdiction does not bar Plaintiff's request for a declaration of his rights under the Operating Agreement.

---

Const. art. VI, §§7, 12). Therefore, federal jurisdiction is not barred on this basis. *See Lepard*, 384 F.3d at 237 (stating that "[t]he standard for determining whether federal jurisdiction may be exercised is whether under state law the dispute would be cognizable only by the probate court").

However, we abstain from exercising our jurisdiction to render a declaratory judgment in this case. Title 28 of the United States Code, § 2201, provides that a federal court's power to give a declaratory judgment is permissive, not mandatory. *See Grand Trunk Western R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 325 (6th Cir. 1984) (citing 28 U.S.C. § 2201). "Where a district court is presented with a claim . . . it should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). In deciding whether to exercise its discretion, this Court has considered the following factors: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would help clarify the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better and more effective. *Grand Trunk R.R. Co.*, 746 F.2d at 326 (citations omitted). *See also Cenker v. Cenker*, 660 F. Supp. 793, 795 (E.D. Mich. 1987) (abstaining on the basis of *Brillhart* although probate exception to diversity jurisdiction was inapplicable).

Applying the relevant factors to the present case, we conclude on balance that abstention is appropriate. Although the declaratory action would clarify the legal relations here, it would not settle the controversy, which in essence is the valuation of the assets. Further, Defendants asked the New York Surrogate's Court to address the stock valuation issue prior to Plaintiff filing his action in federal court, and that court has already endeavored to resolve the issue. Although the state law under which the estate is being administered is not exclusive, *cf. Lepard*, 384 F.3d at 237 (holding

9

that probate exception applies if under state law dispute would be cognizable only by the probate court; concluding probate exception applied because Michigan vests exclusive jurisdiction of trust in Michigan probate courts), "as a practical matter, 'it is the policy of the New York courts to concentrate in the hands of the Surrogate all matters affecting the administration of estates.'" *Moser*, 294 F.3d at 341 (quoting *Beach v. Rome Trust Co.*, 269 F.2d 367, 372 (2d Cir.1959)). Nor is Plaintiff asking the district court to decide a matter over which it has a particular expertise that the probate court does not. Probate courts routinely interpret contracts and can do so in this case. Finally, judicial economy would be promoted by having the issue decided in the probate court, which will otherwise be administering the estate. For these reasons, we deny Plaintiff the declaratory relief he requests. *See also Rice v. Rice Found.*, 610 F.2d 471, 477-78 (7th Cir. 1979) (explaining that discretionary abstention applies to probate-related matters "[w]here the state courts are already familiar with the litigation before the district court and the federal suit is intertwined with the state court proceedings").

In sum, although Plaintiff's request for a declaration of his rights under the Operating Agreement is not barred by the probate exception to diversity jurisdiction, we decline to exercise our subject matter jurisdiction because this matter would be better handled in the pending probate proceeding in the New York Surrogate's Court.

**IV.**

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

10