PHILLIPS, et al., Plaintiffs,

v.

CITIBANK, N.A., et al., Defendants.

16 Civ. 3452 (DAB)

United States District Court,
S.D. New York.

Signed 05/04/2017

**292**

David Craig Berlin, David Rosen & Associates, P.C., New Haven, CT, John Michael Magliery, Shannon Joy Fields, Kennedy Johnson Gallagher, LLC, New York, NY, John Sidney Wirt, Pamela Cocalas Wirt, Wirt & Wirt, P.A., Pace, FL, for Plaintiffs.

Bonnie Lynn Chmil, Joshua Seth Rubenstein, Katten Muchin Rosenman, LLP, New York, NY, Donald Lee Rosenthal, Smith, Gambrell & Russell, LLP, New York, NY, Kimberly Johnson Glenn, Marian C. Rice, L'Abbate, Balkan, Colavita and Contini, LLP, Garden City, NY, Lynne M. Fischman Uniman, Anju Uchima, Andrews Kurth LLP, New York, NY, Thomas Martin Smith, Eckert, Seamans, Cherin & Mellott LLC, White Plains, NY, Solomon N. Klein, Law Office of Solomon N. Klien, New York, NY, for Defendants.

## MEMORANDUM & ORDER

DEBORAH A. BATTS, United States District Judge.

The instant action was filed by Grant Phillips and Scott Phillips (collectively, "Plaintiffs") on May 9, 2016, against Citibank N.A. ("Citibank"), Neal Dorman, individually and in his representative capacity ("Dorman"), Ira Schapiro, in his representative capacity ("Schapiro"), Lightstone Acquisitions III, LLC, LSG 365 Bond Street LLC, and The Lightstone Group LLC (collectively, "Lightstone") (collectively, "Defendants"). Defendants now move to dismiss the Complaint under Fed. R. Civ. Proc. 12(b)(6) and 12(b)(1). For the reasons described below, the Motion is GRANTED in part, and the remaining claims are STAYED.

### I. Background

This case involves the administration of a testamentary trust created by David J. Phillips (the "DJP Trust" or the "Trust"). David was a businessman who was survived by his wife, Sylvia, his son, Joseph, and his grandsons Grant and Scott, Plaintiffs in the current action. (Am. Compl. ¶ 13.)

In 1979, David and Sylvia bought the Brooklyn real property in which their business was headquartered (the "Property"). (Id. ¶ 15.) David and Sylvia owned the Property as tenants-in-common, with David owning a 65% interest and Sylvia owning a 35% interest. (Id.)

David died in 1988. (Id. ¶ 30.) According to Plaintiffs, David's intent—expressed through both his will and various interactions he had with Plaintiffs before his death—was to leave the majority of his estate to Plaintiffs, and only limited income to Joseph. (Id. ¶ 16; see also id. ¶¶ 17–18, 21–22, 25, 115.)

David's will established the DJP Trust, which designated Sylvia and Joseph as income beneficiaries and Plaintiffs as remaindermen beneficiaries. (Id. ¶ 23.) The will also established two separate trusts for Sylvia and Joseph (the "Sylvia Trust" and the "Joseph Trust," respectively). (Id. ¶¶ 25–26.) Sylvia, Joseph, David's accountant, and Chase Manhattan Bank, N.A. ("Chase") were appointed trustees and executors of David's estate. (Id. ¶ 24.) After David's death, his 65% interest in the Property was transferred to the DJP Trust. (Id. ¶ 30.)

Shortly after David died, his accountant did as well, leaving Sylvia, Chase, and Joseph as the three remaining trustees. (Id. ¶ 32.) Plaintiffs allege that, because of Sylvia's old age, Joseph was able to exercise considerable control over the administration of the DJP Trust, and that as a result, Dorman, David's long-time attorney, allegedly quickly aligned himself with Joseph. (Id. ¶¶ 31–35.)

According to Plaintiffs, Joseph and Dorman conspired to persuade Sylvia to write a new will bequeathing her summer home, Manhattan apartment, and certain personal effects to Joseph, despite the fact that she had previously told Plaintiffs that she intended this property to go to them. (Id. ¶¶ 37–42.) Plaintiffs claim that Joseph and Dorman then used their influence to convince Sylvia to make an inter vivos gift to Joseph of her 35% interest in the Property, which she did in 1993. (Id. ¶¶ 44–46.) Sylvia died shortly thereafter, leaving Joseph and Chase as the two remaining trustees. (Id. ¶ 48.)

In 2000, Chase filed a petition for permission to resign as trustee in the New York Surrogate's Court overseeing the administration of David's estate, based in part on its belief that the Property should be sold and Joseph's opposition to this plan. (Id. ¶ 56.) Joseph solicited Citibank to replace Chase, and in a May 2002 en-

gagement letter, Citibank discussed its own intent to sell the Property as soon as possible, a position to which Joseph now apparently acquiesced. (Id. ¶¶ 58–60.) Grant signed the engagement letter, but only on the condition that certain property management fees paid to Joseph would be deducted from income; Scott never signed the letter. (Id. ¶ 62.) In November 2002, Citibank prepared a new engagement letter, and did not seek or obtain the signature of either Plaintiff. (Id. ¶ 63.)

In 2003, the Surrogate's Court entered an order granting Chase's request to resign and appointing Citibank as successor trustee. (Id. ¶¶ 65, 68.) Plaintiffs allege that the court's approval was the result of Joseph's and Citibank's failure to be "forthright" with the court, and provision of an "illusory rationale" for the resignation—Joseph's supposed opposition to the sale of the Property. (Id. ¶¶ 65–66.)

In 2004, Joseph and Citibank, as trustees of the DJP Trust (the "Trustees"), and Joseph, as owner of a 35% interest in the Property, entered into a contract to sell the Property to a company named Toll Brothers for $21.5 million. (Id. ¶ 69.) For reasons not relevant to the current Motion, Toll Brothers refused to close on the sale as scheduled in 2009. (Id. ¶ 75.) Joseph and Citibank filed suit, and obtained a settlement of over $10 million for the DJP Trust and $5 million for Joseph individually. (Id. ¶ 76.)

In 2012, the Trustees and KingsPB, an LLC wholly owned by Joseph, entered into a new contract to sell the Property to Lightstone for $19 million. (Id. ¶¶ 74, 83–84.) Plaintiffs claim that the Trustees never obtained Plaintiffs' approval of the sale, informed them of the salient terms, or performed the analyses necessary to ensure that the sale was in the Trust's best interests. (Id. ¶¶ 85–86.) Plaintiffs also claim that Lightstone was aware that Jo-

seph was both a trustee and owner of KingsPB, positions which Plaintiffs contend constituted a conflict of interest. (Id. ¶¶ 88–92.)

Joseph died in May of 2013, leaving the remainder of his estate to his wife Rosemary and nothing to Plaintiffs. (Id. ¶¶ 96, 99.) Schapiro and Dorman were appointed co-representatives of the estate. (Id. ¶¶ 8–9.) Fewer than six weeks after Joseph's death, the sale of the Property to Lightstone closed. (Id. ¶ 108). Despite the $19 million sales price, Plaintiffs allege that Lightstone "flipped" a parcel adjacent to the Property in 2015 for $75 million. (Id. ¶ 110.)

Plaintiffs filed the instant lawsuit on May 9, 2016. (ECF No. 1.) Count One of the Complaint seeks damages against Citibank, Schapiro, and Dorman for breach of fiduciary duty; Count Two seeks damages against Dorman in his individual capacity for aiding and abetting breach of fiduciary duty; Count Three seeks damages against Citibank, Dorman, and Schapiro for fraud; Count Four seeks damages against Citibank, Dorman and Schapiro for negligent misrepresentation; Count Five seeks damages against Dorman and Schapiro for fraud; Count Six[1] seeks an accounting against Citibank; Count Seven seeks a rescission of the sale or, in the alternative, damages against Lightstone for fraud; and Count Eight seeks to place the Property in constructive trust, and is asserted against Lightstone for aiding and abetting breach of fiduciary duty. (Am. Compl. ¶¶ 112–69.) Broadly speaking, the first five tort claims challenge the administration of the DJP Trust since Citibank's substitu-

tion as trustee, the circumstances of Citibank's engagement as trustee, the sale of the Property, and Sylvia's testamentary and inter vivos transfers to Joseph. Count Six seeks a trust accounting for the same period, and Counts Seven and Eight relate solely to the circumstances surrounding the sale of the Property.

Although not detailed extensively in the Complaint,[2] the Surrogate's Court that probated David's will has been overseeing the administration of his estate, including the DJP Trust, since 1989. (See Chmil Decl. Ex. 8.) In December of 2014, Citibank initiated a voluntary accounting petition in that court, seeking a settlement of the Trust's account for the period of December 1, 2002 through August 31, 2014. (See id. Exs. 5–6.) Plaintiffs filed an answer and objections to Citibank's amended petition as well as a motion to compel the distribution of funds, which became fully briefed in September of 2015. (Id. Ex. 8.) While another set of answers and objections followed in October of 2015, no action appears to have been taken in the case since then. (See id.)

## II. Discussion

### a. Legal Standard

 Where a party seeks dismissal on Rule 12(b)(6) as well as Rule 12(b)(1) grounds, "the court must consider the Rule 12(b)(1) motion first." Stahl York Ave. Co., LLC v. City of New York, No. 14 Civ. 7665(ER), 2015 WL 2445071, at *7 (S.D.N.Y. May 21, 2015). Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction …

---

**1.** This count is also labeled "Count 5" in the Complaint. The Court refers to it as Count Six and relabels the remaining counts accordingly.

**2.** As described below, the Court may consider the affidavits and exhibits submitted by De-

fendants regarding the Surrogate's Court action with respect to Defendants' Motions under Fed. R. Civ. Proc. 12(b)(1). See Fountain, 838 F.3d at 134. In addition, the Court may take judicial notice of the filings in the Surrogate's Court action. Lefkowitz, 676 F.Supp.2d at 239.

when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id.

In resolving a motion to dismiss pursuant to Rule 12(b)(1) motion, "the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." Fountain v. Karim, 838 F.3d 129, 134 (2d Cir. 2016) (quoting Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014)). However, a court may refer to "evidence outside of the pleadings, such as affidavits" to resolve "disputed jurisdictional fact issues." Fountain, 838 F.3d at at 134 (quoting Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000)); see also Kitaru Innovations Inc. v. Chandaria, 698 F.Supp.2d 386, 389–90 (S.D.N.Y. 2010).

A motion to abstain "is considered as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure." Stahl York, 2015 WL 2445071, at *7; see also Jenkinson v. Baptiste–Bruno, 16 Civ. 4519 (AJP), 2016 WL 7377234, at *2 (S.D.N.Y. Dec. 20, 2016). Because electing to abstain would preclude an examination of the merits in this case, the Court addresses Defendants' abstention arguments first. See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." (quotation marks and citation omitted)); Spargo v. New York State Comm'n on Judicial Conduct, 351 F.3d 65, 74 (2d Cir. 2003).

### b. Abstention

Defendants argue that the Court should abstain in favor of the currently pending Surrogate's Court proceeding under Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Colorado River abstention is available "to avoid duplicative litigation" based on "considerations of wise judicial administration." Id. at 817, 96 S.Ct. 1236 (quotation marks and citation omitted). For this type of abstention, the threshold requirement is that the lawsuits be parallel, meaning that "substantially the same parties are contemporaneously litigating substantially the same issue in another forum." Dittmer v. Cty. of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998) (citations and quotation marks omitted).

"Perfect symmetry of parties and issues is not required" for the federal and state proceedings to be considered parallel. Abe v. New York Univ., No. 14-cv-9323 (RJS), 2016 WL 1275661, at *6 (S.D.N.Y. Mar. 30, 2016) (quoting Shields v. Murdoch, 891 F.Supp.2d 567, 577 (S.D.N.Y. 2012)). "Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." Abe, 2016 WL 1275661, at *6 (quotation marks and citation omitted); see also Jenkinson, 2016 WL 7377234, at *3 n.2 ("In this Circuit, parallelism can be achieved absent strict identity among the parties to the federal and state actions. The parties, rather, need only be 'substantially the same.'").

The current action involves the same issues and events that have been the subject of litigation in the Surrogate's Court since 1989: the intent and administration of David's will, the administration of the DJP Trust, and the management of assets within the purview of that trust. More specifically, in the recently-filed accounting petition, Plaintiffs submitted ob-

jections that include claims of breach of fiduciary duty and trust maladministration nearly identical to those asserted in this action. For example, Plaintiffs assert breach of fiduciary duty, self-dealing and biased administration of the Trust in paragraphs 1(d)-(g), 2(a)-(b), 2(d), 3(a), 4(b), 6(a)-(b), 6(d)-(h), 7(a), 9, 10, 11(b), and 13 of their objections; negligent administration of the Trust in paragraphs 1(f), 3(b), 5, and 6(c), 6(h); actions that contravene the intent of David's will in paragraphs 4(b)(iii) and 11(b); conscious and deliberate breach of duties in paragraphs 1(b), 1(d) and 6(d); accrual of excessive expenses and misallocation of costs to principal in paragraphs 1(a)-(d), 3(a), and 6(a); misallocation of money to income or the income beneficiary in paragraphs 4(b), 6(e), 8, and 11(b); and mishandling of the 2002 engagement letters in paragraphs 6(e) and 7(a). (See Pls.' Verified Objs. ("Objs."); Chmil Decl. Ex. 7.) Likewise, the Complaint here details a multi-decade history of alleged misconduct by the Trustees, including self-dealing and breach of fiduciary duties, see, e.g., Am. Compl. ¶¶ 115, 118, 126–27, 156, 167; maladministration of the Trust, both deliberate and negligent, see id. ¶¶ 115, 118, 125, 128–29, 131, 150; improper handling of the 2002 engagement letters, see id. ¶¶ 128–29, 136; actions that contravene the intent of David's will, see id. ¶¶ 115, 118; improper accrual of expenses and assignment to principal, see id. ¶¶ 115, 118, 150; and improper diversion of money to income. (See id. ¶¶ 115, 118.) In fact, in some sections, the Complaint appears to directly challenge the positions taken by the Trustees in Surrogate's Court—for example, the Trustees' proposal to adjust to divert income for the benefit of Joseph's estate, see id. ¶¶ 115, 118—without letting these positions resolve themselves in that court first. Finally, Plaintiffs request that this Court order Citibank to render an accounting, despite the fact that Citibank has already voluntarily initiated an accounting in Surrogate's Court.

Plaintiffs' objections are also replete with allegations of mismanagement of the Property, many of which revolve around the misallocation of Property expenses, biased distribution of fees and improper administration of the engagement letters complained of in this action. (See Objs. ¶¶ 3(a)-(b), 5, & 6(e)-(f).) However, some of the specific misconduct alleged and relief requested differs: In Surrogate's court, for example, Plaintiffs have objected to the Trustees' failure to collect rent properly, an allegation not found in the Complaint here. (Objs. ¶ 5.) In addition, while Plaintiffs seek a rescission and constructive trust in this Court, in Surrogate's Court, they have requested the distribution of funds originating in large part from the sale of the Property, and do not appear to challenge the propriety of the sale at all. (See Smith Aff. Ex. E.). In fact, in the Surrogate's Court action, Plaintiffs present arguments that rely on Joseph's interest in and sale of the Property—both of which Plaintiffs now seek to challenge in this Court. (See Objs. ¶ 4(b)(iii).)

Nevertheless, the fact that Plaintiffs seek different, and even conflicting, forms of recovery in this action does not defeat parallelism, where the underlying events remain identical. See Telesco v. Telesco Fuel and Masons' Materials, Inc., 765 F.2d 356, 362 (2d Cir. 1985) ("Merely raising an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit."); Garcia v. Tamir, No. 99 Civ. 0298(LAP), 1999 WL 587902, at *3 (S.D.N.Y. Aug. 4, 1999) ("[E]ven if different relief is sought in the two actions, or the claims are not exactly the same, they are parallel as long as the causes of action are comprised of the same essential issues."). Rather, the introduction of theo-

ries of recovery in this Court that would necessarily interfere with the Surrogate's Court proceedings demonstrates exactly why the two actions should not proceed contemporaneously.

Plaintiffs do not contest that the proceedings are parallel, but argue in a later section that the balance disfavors abstention because Dorman and Lightstone are not Defendants in the accounting proceeding. That is not completely true: Dorman is involved in the Surrogate's Court proceeding as a representative of Joseph's estate, and, in fact, was named by both Citibank and Plaintiffs as an interested party and served accordingly. (See Chmil Decl. Exs. 5–7.) While Dorman is named here in his individual capacity as well, the only claim against him in this capacity appears to be for aiding and abetting breach, a claim whose survival depends on whether Joseph committed a breach in the first instance. If the Surrogate's Court determines that the Trust was dutifully administered, there will be no basis for a claim against Dorman in this Court, either. See Abe, 2016 WL 1275661, at * 6 ("[T]here is ... a substantial likelihood that the State Action will dispose of Plaintiff's four claims brought under Title VII or ADEA in the Federal Action, since a victory for Defendant on Plaintiff's NYCHRL claims will necessarily require dismissal of Plaintiff's Title VII and ADEA claims."); cf. Congress Talcott Corp. v. Roslin, No. 95 Civ. 7698LAP, 1996 WL 499337, at *3 (S.D.N.Y. Sept. 4, 1996) ("Al-

though the defendants are not the same, they are closely related.").

The same is true for the claim of aiding and abetting breach asserted against Lightstone. Indeed, the Court questions whether Lightstone is Plaintiff's real party of interest, where the Complaint makes little attempt to tie the fiduciary defendants' alleged misconduct to Lightstone's liability, and where the primary relief sought against Lightstone is equitable relief that could be asserted more easily against the Trust. Not only could this relief be requested in Surrogate's Court, it *should* be, given the seemingly conflicting relief already requested there and Plaintiffs' claim that the sale arose in part due to the Trustees' failure to be forthright with that court. Cf. Mercer v. Mercer, No. 13-CV-5686 (SJF)(WDW), 2014 WL 3654667, at *11 (E.D.N.Y. May 22, 2014) ("Perhaps the claims have not been before the Surrogate phrased as they are in the federal complaint. But that does not answer the question of whether, viewed in the larger context of the overall Surrogate's proceeding concerning the estate, its administration, and the trusts, that the claims are inherently part of that proceeding and should be determined in that forum."). In fact, it is far from clear that this Court even has jurisdiction to entertain claims implicating the property of a trust involved in ongoing accounting proceedings.[3] See Mercer v. Bank of New York Mellon, N.A., 609 Fed.Appx. 677, 680 (2d Cir. 2015) ("[Plaintiffs] are asking the District Court to undo specific actions already

---

3. The same could be said about the claims against the executors of Joseph's estate in their representative capacity. See Fisch v. Fisch, No. 14-cv-1516 (NSR), 2014 WL 5088110, at *3 (S.D.N.Y. Sept. 23, 2014) ("Defendant is being sued in her capacity as Executrix of the estate.... This brings Plaintiff's claim squarely within the bounds of the probate exception to federal jurisdiction."). Joseph's estate assets have apparently yet to

be distributed. (See Berlin Decl. Ex. 3.) Thus, Plaintiffs' claims for a rescission and a constructive trust could implicate property under the control of the Surrogate's Court in not only David's estate proceedings, but Joseph's, as well. See Groman, 2007 WL 3340922, at *5 ("Because the Byron shares were held by Pappas at the time of his death, they automatically became an asset of the Estate.").

taken by the trustees during the period of probate administration that Plaintiffs disagree with. Such claims against trustees by a trust's beneficiaries for 'administration and restoration of corpus' cannot be maintained if another court is already exercising control over the trust." (citation omitted)); Mercer v. Bank of New York Mellon, N.A., No. 13-CV-5686 (SJF)(WDW), 2014 WL 3655657, at *3 (E.D.N.Y. July 21, 2014) ("The filing of the trust accounting on June 5, 2014 placed the trusts squarely before the Surrogate's Court. Therefore, the ... probate exception applies."), aff'd, 609 Fed.Appx. 677; Groman v. Cola, No. 07 CV. 2635(RPP), 2007 WL 3340922, at *6 (S.D.N.Y. Nov. 7, 2007) ("Even if the Byron shares that Defendant purchased were no longer considered property in the Surrogate Court's custody after being sold, this case still concerns a res in the custody of the Surrogate's Court. The non-negotiable promissory note ....").

In any event, parallelism does not require an "exact identity of parties ... when the interests of the parties in each case are congruent," as the interests of Lightstone, Joseph's estate, and the Trustees in preserving the completed sale would be. Greenburgh No. 11 Fed'n of Teachers v. Bd. of Educ. of Greenburgh Eleven Union Free Sch. Dist., No. 95 Civ. 2938 JSR, 2006 WL 4490731, at *2 (S.D.N.Y. Sept. 26, 2006) (internal quotation marks omitted). "If the rule were otherwise ... the Colorado River doctrine could be entirely avoided by the simple expedient of naming additional parties," which the Court suspects may have been the objective here. Manna v. Greenburgh No. 11 Sch. Dist., 2 F.Supp.2d 461, 468 n.4 (S.D.N.Y. 1998) (quoting Lumen Constr., Inc. v. Brant Constr. Co., 780 F.2d 691, 695 (7th Cir. 1985)). As such, the Court does not find that the additional claims in this case defeat the otherwise parallel nature of this proceeding and the Surrogate's

Court one. See Bromfield v. Lend-Mor Mortg. Bankers Corp., No. 3:15-cv-1103 (MPS), 2016 WL 632443, at *4 (D. Conn. Feb. 17, 2016) ("In this federal action.... several other additional parties are named as defendants ... [however,] the cases are parallel because the main issue in the pending litigation in state court—the foreclosure of Bromfield's property—is also the main issue in this federal action.").

■ After determining that the state and federal proceedings are parallel, the question becomes whether the court should exercise its discretion to abstain. In making this determination, courts consider the following factors: "(1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal actions will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights." General Star Int'l Indem., Ltd. v. Chase Manhattan Bank, 57 Fed.Appx. 892, 893 (2d Cir. 2003) (citation omitted). These factors must be weighed against courts' "virtually unflagging obligation ... to exercise the jurisdiction given them." Colorado River, 424 U.S. at 817, 96 S.Ct. 1236.

i. The Assumption of Jurisdiction Over the Res.

■ In this case, "[t]he Surrogate's Court has assumed jurisdiction over the trust[ ] at issue, as part of [David's] estate," and "it appears that [Plaintiffs] ha[ve] participated actively" in the Surrogate's Court proceeding "by filing briefs in opposition" to the accounting petition and

in support of a distribution of funds. <u>Durst v. Siegler</u>, No. 04 Civ. 6981 RMB, 2005 WL 3358599, at *9 (S.D.N.Y. Dec. 7, 2005); see also <u>Kennedy v. Trs. of Testamentary Tr. of Will of Kennedy</u>, 406 Fed. Appx. 507, 510 (2d Cir. 2010) ("[Plaintiff] asks the Court to dispose of property that is in the custody of a state probate court, in this case, the court administering the testamentary trust." (quotation marks and citation omitted)); <u>Lefkowitz v. Bank of New York</u>, 676 F.Supp.2d 229, 275 (S.D.N.Y. 2009) ("[T]he probate courts have, in substance, assumed jurisdiction over the assets of plaintiff's parents' estates."). Indeed, the Surrogate's Court has been involved in the administration of David's estate since 1989, and has been aware of the potential sale of the Property since at least 2000. And while Plaintiffs contend that this Court has obtained jurisdiction over the Property, the Court has not, to date, made a single substantive ruling in this action, much less one that affects the Property.

Although the personal damages claims here do not independently implicate a res, they remain inextricably linked with the issues of trust administration pending before the Surrogate's Court, and in some cases, are only requested as an alternative to relief affecting property under the Surrogate's Court's jurisdiction.[4] Therefore, this factor weighs in favor of abstention.

### ii. The Inconvenience of the Federal Forum.

■ Plaintiffs argue that litigation in this Court imposes no greater inconvenience than litigation in state court, given the close proximity of the courts. While this may be technically correct, "there is plainly inconvenience in having to litigate actively in both state and federal courts at the same time." <u>Lefkowitz</u>, 676 F.Supp.2d at 275; see also <u>Colony Ins. Co. v. Danica Group, LLC</u>, No. 13-CV-1714 (RRM)(MDG), 2014 WL 4417353, at *7 (E.D.N.Y. Sept. 8, 2014) ("[F]orcing [Defendant] to litigate in two courts would be unduly burdensome to [Defendant].... Further, forcing two courts to adjudicate the Policies' enforceability would be a waste of judicial resources."); <u>Goldman v. Estate of Goldman</u>, 97 F.Supp.2d 370, 382 (S.D.N.Y. 2000). Thus, this factor weighs, at least modestly, in favor of abstention.

### iii. The Avoidance of Piecemeal Litigation

■ "[T]he danger of piecemeal litigation is the paramount consideration" in the analysis, due in part to the possibility of "inconsistent disposition of the[] claims." <u>Arkwright–Boston Mfrs. Mut. Ins. Co. v. City of New York</u>, 762 F.2d 205, 211 (2d Cir. 1985). This factor favors abstention even where the actions are "merely duplicative," such that the availability of res judicata or collateral estoppel would mitigate the risk of inconsistent outcomes. <u>Tarka v. Greenfield Stein & Senior, LLP</u>, No. 00 Civ. 1262(SAS), 2000 WL 1121557, at *5 (S.D.N.Y. Aug. 8, 2000) ("[T]he existence of merely duplicative litigation weighs in favor of abstention, although it is not a determinative factor."); see also <u>Colony Ins.</u>, 2014 WL 4417353, at *7 ("[E]ven where principles of res judicata and collateral estoppel would apply, the risks of duplicative litigation and an unseemly race to judgment weigh in favor of abstaining.").

---

4. Moreover, as described above, the claims against the executors in their representative capacity could implicate the res under the jurisdiction of the Surrogate's Court in Joseph's proceeding, as well. See <u>Fisch</u>, 2014 WL 5088110, at *3 ("Defendant is being sued in her capacity as Executrix of the estate.... Any relief that would be ordered by this Court if Plaintiff succeeded on the merits would necessarily implicate the distribution of a <u>res</u> that is under the control of the Surrogate Court.").

██ Plaintiffs here have participated in the Surrogate's Court proceedings for over a decade, and have filed objections to the accounting petition that mirror many of the allegations in the Complaint. Plaintiffs have also filed a motion to compel the distribution of funds, which became fully briefed in September of 2015.

More importantly, the claims in the Complaint are inherently intertwined with issues that the Surrogate's Court is simply better-positioned to decide, including the intent of David's will and the long and tumultuous history of family conflict underlying many of the allegations. Similarly, the claims regarding the administration of the DJP Trust reach back over a decade, a period during which the Surrogate's Court had jurisdiction over the estate and one encompassed by the current accounting petition. See Durst, 2005 WL 3358599, at *9 ("The efficient resolution of Durst's complaints is best left to the Surrogate's Court, which are much further along than the proceedings in this Court."); In re Horler, 799 F.Supp. 1457, 1465 (S.D.N.Y. 1992) ("It can hardly be doubted that the court in which the underlying litigation is pending is better placed to analyze claims of privilege than this Court, which is a relative stranger to the case for which the allegedly privileged documents were generated.").

To be sure, the presence of additional defendants here means that the Surrogate's Court action perhaps cannot be a "complete and perfect substitute for this one." Pabco Const. Corp. v. Allegheny Millwork PBT, No. 12 Civ. 7713, 2013 WL 1499402, at *4 (S.D.N.Y. Apr. 10, 2013). Still, the resolution of the Surrogate's Court action will either preclude recovery completely or collaterally estop the reliti-

gation of substantive issues in this action, thus alleviating the risk of duplicative effort and varied results. See id.; Lefkowitz, 676 F.Supp.2d at 275 ("[I]f plaintiff were to be allowed to pursue some or all of her remaining claims here while there was a continuing proceeding in the New York County Surrogate's Court, the parties would face the almost inevitable prospect of piecemeal, and indeed duplicative, litigation."); Arkwright, 762 F.2d at 211 ("Maintaining virtually identical suits in two forums ... would waste judicial resources and invite duplicative effort."). On the other hand, because the Surrogate's Court action also involves allegations and remedies not raised here, proceeding forward with this case would only lead to a heightened risk of inconsistent recovery, and not a complete resolution of the issues.[5] See U.S. v. Blake, 942 F.Supp.2d 285, 298–99 (E.D.N.Y. 2013) ("[R]esolution of the Plaintiff's claim in this Court will fail to resolve all the issues presented in the Quiet Title Action."); Ash v. Alexander, No. 99 Civ. 3820(JSR), 2000 WL 20704, at *3 (S.D.N.Y. Jan. 12, 2000) ("Although the federal plaintiff is not the representative shareholder in the state action, both actions are derivative shareholder suits arising out of the same events and involving overlapping claims. Continuation of both suits thus risks inconsistent findings with respect to the real party in interest in both actions."); Caisse Nationale de Credit Agricole v. Bank of Tokyo–Mitsubishi Trust Co., No. 97 Civ. 588 (PKL), 1997 WL 345216, at *6 (S.D.N.Y. June 20, 1997) ("[T]he claims in this case are inextricably linked with the Foreclosure Action, which was filed well before the federal suit was commenced, and continuation of the suit in this Court would necessarily fragment res-

---

**5.** For example, the Surrogate's Court could make certain determinations based on the fact that the sale of the Property has occurred—as Plaintiffs have urged it to—or Plaintiffs could receive the distributions of the sale in that case and then a rescission in this case, leading to a double recovery.

olution of the Foreclosure Action."). Thus, this factor weighs in favor of abstention.

### iv. The Order in Which Jurisdiction Was Obtained.

■ This factor examines how much relative progress has been made in the actions and when each action began. See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Plaintiffs argue that this factor weighs against abstention because there have been more docket entries in this proceeding and because they filed a 53–page Amended Complaint; to date, however, the Court has taken almost no substantive action beyond attending to the current motions to dismiss, and the majority of the docket entries are, in fact, related to these motions. See Pabco, 2013 WL 1499402, at *4 ("In this action ... the instant motion is the only substantive activity to date."); Am. Disposal Servs., Inc. v. O'Brien, 839 F.2d 84, 88 (2d Cir. 1988) ("[T]he federal court proceedings barely have addressed the underlying claims, and have instead concentrated on the propriety of bringing suit in federal court at all.").

Further, the Surrogate's Court has dealt with issues involving the DJP Trust and the administration of David's estate for far longer than this Court. Cf. Moser v. Pollin, 294 F.3d 335, 345 (2d Cir. 2002) ("Expertise in this specialized inquiry falls squarely within the province of the Surrogate's Court, a forum that can offer full legal relief for either side as well as prior judicial experience with the decedent's estate in particular."). Even the accounting petition, which invokes many of the specific claims made in this action, has been pending before the Surrogate's Court since 2014. (See Chmil Decl. Ex. 8.) In that proceeding, Citibank filed a 200+ page petition in 2014 and an amended petition in 2015; Plaintiffs in turn filed objections and a motion to compel distribution of funds, which was briefed along with an opposition

and a reply. (Id. Exs. 5–8; see also Smith Aff. Ex. E.) Answers and objections were then submitted again in 2015. (Chmil Decl. Ex. 8.) By contrast, this Court has yet to reach any of the substantive issues raised in the Complaint, and has only addressed its own jurisdiction to hear the case. This factor thus weighs in favor of abstention.

### v. The Law that Applies the Rule of Decision.

■ This factor favors abstention, as well. The Complaint relates exclusively "to state law issues (i.e., trusts and estates laws), which the Surrogate's Court is better equipped to adjudicate." Durst, 2005 WL 3358599, at *9; see also Lefkowitz, 676 F.Supp.2d at 275 ("As for the relevant body of law, plaintiff's claims here are all based on New York law.").

Although Plaintiffs are correct that "the absence of federal issues does not *strongly* advise dismissal," Vill. of Westfield v. Welch's, 170 F.3d 116, 124 (2d Cir. 1999) (emphasis added), "it does favor abstention where the bulk of the litigation would necessarily revolve around the state-law rights of numerous parties." De Cisneros v. Younger, 871 F.2d 305, 309 (2d Cir. 1989) (internal quotation marks, alterations and citation omitted). And while the claims here may not present novel legal issues, this need not be the case for the Court to nevertheless agree "that New York courts possess particular competence in determining what constitutes a breach of fiduciary duty under New York" trust law. Ash, 2000 WL 20704, at *3.

Indeed, the claims raised in Plaintiffs' Complaint "necessarily involve questions regarding the administration and distribution of Plaintiff's property that have traditionally been considered matters of important state interest." Hodge ex rel. Skiff v. Hodge, 78 F.Supp.2d 29, 32–33 (N.D.N.Y. 1999); see also Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel, 490 F.2d 509,

516 (2d Cir. 1973) ("[T]here is particularly strong reason for abstention in cases which, though not within the exceptions for matters of probate and administration or matrimony and custody actions, are on the verge, since like those within the exception, they raise issues in which the states have an especially strong interest and a well-developed competence for dealing with them." (internal quotation marks omitted)). Because the Surrogate's Court has "special expertise" in "matters related to the probate and administration of wills," Horler, 799 F.Supp. at 1466—not to mention the particular affairs of the Parties here—it is "better situated to resolve the controversy over the parties' rights as . . . distributees or legatees of Plaintiff's estate." Hodge, 78 F.Supp.2d at 33.

### vi. The Adequacy of the State Procedures to Protect Plaintiff's Federal Rights.

In this case, "no federal rights are at stake," as the Complaint is brought solely under state law. Mercer, 2014 WL 3654667, at *12; see also Colony Ins., 2014 WL 4417353, at *8 ("This assertion that Colony's rights 'may not' be adequately protected in state court is merely tentative and, in any event, does not concern federal rights."); Gardner v. Weisman, No. 06 Civ. 6003(WHP), 2007 WL 30068, at *5 (S.D.N.Y. Jan. 3, 2007) ("This factor is inapplicable because none of Petitioner's federal rights are at issue in the instant proceeding."); Sun Life Assur. Co. of Canada (U.S.) v. Gruber, No. 05 Civ. 10194(NRB), 2006 WL 1520524, at *5 (S.D.N.Y. June 1, 2006). Further, "[t]he Surrogate's Court is able to entertain all of" the claims raised in Plaintiffs' Complaint, Durst, 2005 WL 3358599, at *10: By statute, the Surrogate's Court is required to "continue to exercise full and complete general jurisdiction in law and in equity to administer justice in all matters relating to estates and the affairs of decedents." New York Surrogate's Court Procedure Act ("SCPA") § 201(3); see also Moser, 294 F.3d at 345 ("[T]he incidental powers of the Surrogate's Court include 'all of the powers that the supreme court would have in like actions and proceedings.'" (quoting SCPA § 209(10)).

Plaintiff nevertheless argues that its rights will not be protected because (1) Citibank has "abandoned" the accounting petition in Surrogate's Court, and (2) this case asserts claims and involves parties not involved in the Surrogate's Court proceedings.

With respect to the first contention, Plaintiffs cite no authority for why Citibank should be deemed to have abandoned the petition it initiated—if anything, it appears that progress in that case was stalled when *Plaintiffs* chose to forego the proceedings and file instead in this Court. With respect to the second argument, the primary relief Plaintiffs seek in their claims against Lightstone is a reversal of the sale and the imposition of a constructive trust, forms of relief which may be sought in the Surrogate's Court action. SCPA § 201(3) ("The court shall continue to exercise full and complete general jurisdiction in law and in equity . . . to try and determine all questions, legal or equitable, arising between any or all of the parties to any action or proceeding, or between any party and any other person having any claim or interest therein."). Indeed, even if Plaintiffs elect not to involve Lightstone in the Surrogate's Court proceedings, Joseph's estate and the Trustees "have an identity of interest with" Lightstone such that Plaintiffs may assert the same claims and obtain the same relief from them. Horler, 799 F.Supp. at 1465; cf. Moser, 294 F.3d at 345 ("[T]he Supreme Court ordinarily refrains from exercising the concurrent jurisdiction where all the relief requested may be obtained in the Surro-

gate's Court where the matter is pending." (quotation marks and citations omitted)).

In their fraud claim against Lightstone, Plaintiffs request damages in the event that a rescission is not available, or put differently, in personam relief against a Defendant absent from the Surrogate's Court proceedings. (Am. Compl. ¶ 160.) As described below, regardless of the merits of this claim, it will be stayed and not dismissed. Following the Surrogate's Court's determinations regarding liability and relief, however, the claim will either be foreclosed completely or the Court will be left with very little to do. See Pabco, 2013 WL 1499402, at *4 ("[D]ue to the presence of GA as a defendant in this action but not in the Pennsylvania Action, the Pennsylvania Action cannot be a complete and perfect substitute for this one ... However, once there is a decision in the Pennsylvania Action as to Pabco's and Allegheny's respective rights ... all of the substantive issues implicated in this case would presumably be subject to res judicata."). Thus, while the presence of an in personam claim against Lightstone means that this factor might weigh against a full *dismissal* of the action, "it militates just as strongly in favor of a stay." Id. (emphasis omitted).

On the whole, there is no real dispute that the Surrogate's Court would fail to protect Plaintiff's federal rights, given the lack of federal rights at stake, the broad jurisdiction of the Surrogate's Court, and the Surrogate's Court's ongoing involvement in the administration of the estate. However, "the ability of the state court to adequately protect Plaintiff's interests only makes this factor neutral." Dalzell Mgmt. Co. v. Bardonia Plaza, LLC, 923 F.Supp.2d 590, 602 (S.D.N.Y. 2013).

### c. Disposition of the Action

On balance, five factors favor abstention while one is neutral, and thus, the Court believes that abstention is the appropriate course of action in this case.

When a Court chooses to abstain pursuant to Colorado River, it may elect to stay actions for damages or dismiss actions "seeking equitable or otherwise discretionary relief." Cadle Co. v. Bankers Fed. Savs. FSB, 929 F.Supp. 636, 639 (E.D.N.Y. 1996) (citing Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 724–25, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996)); see also 767 Third Ave. Assocs. v. Consulate Gen. of Socialist Fed. Republic of Yugoslavia, 218 F.3d 152, 163 (2d Cir. 2000). "In cases which present mixed questions of equity and law, claims for damages may 'remain in federal court while claims for equitable relief are dismissed entirely.'" In re MetLife Demutualization Litig., 156 F.Supp.2d 254, 265 (E.D.N.Y. 2001) (citing Johnson v. Collins Entm't. Co., Inc., 199 F.3d 710, 727 (4th Cir. 1999)).

Here, the requests for an accounting, constructive trust, and rescission seek equitable relief, and thus will be dismissed without prejudice. See Beck Chevrolet Co. v. Gen. Motors, LLC, 787 F.3d 663, 680 (2d Cir. 2015) ("Rescission is an equitable remedy, the use of which is generally left to the courts' discretion."); In re First Cent. Fin. Corp., 377 F.3d 209, 216 (2d Cir. 2004) ("New York law is clear that a constructive trust is an equitable remedy."); Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 131 (2d Cir. 2014) ("[T]he common law action of 'account' is one of the earliest examples of a restitutionary action in equity."). Because the aiding and abetting claim against Lightstone seeks only a constructive trust, it will be dismissed in its entirety, while the fraud claim will be limited to recovery of personal damages.

What remains are the first five claims for breach of fiduciary duty, fraud, aiding and abetting, and negligent misrep-

resentation, all of which seek damages, and the fraud claim against Lightstone, to the extent that it seeks personal damages and not a rescission. These remaining claims will be stayed pending resolution of the proceedings in the Surrogate's Court.

### III. Conclusion

For the reasons described above, Defendants' Motion to Dismiss is GRANTED in part. Plaintiffs' claims for an accounting, for aiding and abetting against Lightstone, and for fraud against Lightstone to the extent Plaintiffs seek a recission are DISMISSED WITHOUT PREJUDICE. The remaining claims are stayed pending resolution of the Surrogate's Court proceedings.

SO ORDERED.